Eric H. Gibbs (SBN 178658)
Andre Mura (SBN 298541)
Steven Lopez (SBN 300540)
**GIRARD GIBBS LLP**
One Kaiser Plaza, Suite 1125
Oakland, CA 94612
Telephone:  (510) 350-9700
Facsimile:(510) 350-9701
ehg@classlawgroup.com
amm@classlawgroup.com
sal@classlawgroup.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL LEVINE, on behalf of himself and all others similarly situated,<br><br>           Plaintiff,<br>     v.<br><br>VIZIO, INC.<br><br>           Defendant. | Case No. 8:15-cv-02151<br><br>CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Daniel Levine, on behalf of himself and all others similarly situated, alleges the following against Defendant Vizio, Inc. ("Vizio"):

## SUMMARY OF CASE

1. Since its founding in 2002, television manufacturer Vizio, a California-based company, has sought to gain market share by developing, marketing, and selling so-called "smart" televisions "with the latest innovations at a significant savings that [it] can pass along to [its] consumers."[1] Smart TVs offer some of the same functionality as a computer, tablet, or smartphone, by allowing direct access to movies, television, and music through the Internet.

2. Vizio's latest innovation—"Smart Interactivity"—does more, however, than allow consumers to watch or listen to Internet-available programming on their televisions. Unbeknownst to consumers, Vizio's Smart TVs are in effect *watching them*: The Smart Interactivity platform collects information about what programming consumers watch, and Vizio then distributes this information to third-party advertisers and data brokers. Worse still, Smart Interactivity allows third parties who obtain this data to push targeted ads to other electronic devices, such as computers or smartphones, which share the same Internet network connection as a Vizio Smart TV.

3. Vizio fails to obtain its consumers' consent to monitor their viewing habits in their own homes or to push ads to their other devices. Whereas other major television manufacturers, such as LG Electronics and Samsung, require consumers affirmatively to turn on such data collection features, Vizio's Smart Interactivity is turned on by default. Vizio also never clearly explains that its Smart Interactivity platform is collecting consumer data and viewing habits and disseminating this private information to third parties.

---

[1] "About Vizio," http://www.vizio.com/about (last visited Dec. 23, 2015).

4. All the while, Vizio has signaled to investors that it plans to continue, if not expand, its data collection practices. Plaintiff Levine thus brings this putative class action suit against Vizio to enforce his and other Vizio owners' privacy and consumer rights under federal and state law.

## PARTIES

5. Plaintiff Daniel Levine is a citizen and resident of Bothell, Washington, located in Snohomish County.

6. Defendant Vizio, Inc., is a California corporation with its principal place of business in Irvine, California.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that certain of the claims alleged herein arise under federal law, namely the Video Privacy Protection Act. This Court has supplemental jurisdiction over the state law claims.

8. This Court also has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and at least one class member is a citizen of a different state than Defendant Vizio.

9. This Court may exercise jurisdiction over Vizio because its headquarters are located in California; it is registered to conduct business in California; it has sufficient minimum contacts in California; and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products, thus rendering the exercise of jurisdiction by this Court proper and necessary.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Vizio is headquartered in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

# FACTUAL ALLEGATIONS

## About Vizio

11. Vizio is one of the largest consumer electronics companies in the United States. Since its founding in 2002, it has sold over 65 million television and audio sets. Vizio sells its products in over 8,000 retail stores throughout the United States. In 2014, it held the second-largest market share of Smart TVs in the country.

12. Vizio claims to be "transforming the way consumers discover and experience media content through [its] connected entertainment platform."[2] The company strives to set itself apart from competitors through its method of capturing real-time behavior data from its consumers and transmitting that data to advertisers and media content providers, thereby driving "delivery of more relevant, personalized content" through its products.[3]

## About Smart TVs

13. Since the mid-2000s, Smart TVs have become increasingly popular in the United States. A Smart TV is essentially a technological cross between a computer and a television. Aside from the traditional function of a television set, a Smart TV is also equipped with integrated software applications, such as a web browser and on-demand services such as Netflix, Hulu, and Internet music stations. Smart TVs may be connected to the Internet, thus allowing users to access a wide variety of online media content.

14. Although Smart TVs are more expensive than traditional television sets, Smart TVs are in high demand because consumers value their software applications,

---

[2] Vizio, Inc. Form S-1 Registration Statement, https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612ds1.htm#toc946612_1 (last visited Dec. 21, 2015).

[3] *Id.*

which allow consumers to watch a wide variety of movies and television shows on an on-demand basis, including programming that may not otherwise be available on network television.

15. Manufacturers such as Vizio pre-load an operating system onto the Smart TVs they sell. Manufacturers also typically pre-load a number of popular software applications (such as Netflix and Hulu) onto Smart TVs. Once a consumer purchases and sets up his Smart TV, he has the ability to download additional software applications. Vizio and other manufacturers regularly update their operating system to introduce new features, improve applications, and update software.

### Content Recognition Software in Vizio TVs

16. Vizio Smart TVs come with "the ability to intelligently recognize attributes of the content playing on-screen,"[4] a feature that Vizio calls "Smart Interactivity." Smart Interactivity collects a myriad of data – including programs and commercials viewed by consumers (including the time, date, and channel viewed, and whether the individual viewed them live or at a later time), whether they clicked on any advertisements, as well as the identity of the consumers' cable or satellite television provider. According to Vizio, "Inscape data services have the ability to collect viewing behavior from any content displayed on the screens of [their] Smart TVs. [They] currently collect viewing behavior on most content that connects to [their] Smart TVs via external input."[5] Vizio also tracks data from gaming consoles connected to its Smart TVs.

17. Smart Interactivity is run on automatic content recognition software by Inscape Data Services ("Inscape"), a technology enabled by Cognitive Media Networks,

---

[4] http://www.vizio.com/inscape (last visited Dec. 21, 2015).

[5] https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612 ds1.htm#toc946612_10 (last visited Dec. 22, 2015).

Inc., a software provider that was acquired by Vizio in August 2015. In addition to consumer viewing data, Inscape collects consumers' IP addresses (which are unique identifiers assigned to personal digital devices such as laptops, tablets, and Smart TVs), zip codes, online services they visit, as well as information about the consumers' Vizio product (i.e. MAC addresses (hardware addresses that uniquely identify each node of a network), product model numbers, hardware and software versions, chipset IDs, and region and language settings). As Vizio puts it, Inscape provides "highly specific viewing behavior data on a massive scale with great accuracy."[6] Vizio boasts that its software pulls 100 billion "viewing data points" from its Smart TVs every day.

18.    Vizio's default policy is to turn **on** this data collection feature on all of its Smart TVs. This default "on" setting differentiates Vizio from competing television manufacturers such as Samsung and LG Electronics, who only track users' viewing habits if the users voluntarily turn the feature on. Unless a Samsung or LG consumer opts into the data collection program, those companies will not collect personal data from them. By contrast, to avoid having their personal viewing habits collected, a Vizio consumer has to opt out of the data collection feature. Vizio states that it has sold over eight million Smart TVs since its inception – meaning, it has monitored millions of consumers' viewing data over the past few years, presumably without their knowledge or express permission.

19.    Vizio mentions Smart Interactivity and its data collection in its Privacy Policy, but this policy is not clearly disclosed to consumers.[7] The Privacy Policy is

---

[6] https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612 ds1.htm#toc946612_10 (last visited Dec. 22, 2015).

[7] Vizio provides instructions for opting out of Smart Interactivity on its webpage on Inscape; this link, however, is not provided to consumers upon purchase of a Smart TV. *See* http://www.vizio.com/inscape (last visited Dec. 22, 2015).

buried within the "Reset & Admin" section of a Smart TV's settings menu, and is in extremely small font (see photo below). Further, the policy is lengthy and confusing.[8] Nowhere in the policy does Vizio disclose that viewing data will be sold to third parties. Rather, it vaguely states that viewing data is used to "inform third party selection and delivery of targeted and re-targeted advertisements."[9]



20. Even more invasive is the fact that such targeted advertisements may be delivered not only to a consumer's Vizio Smart TV, but to any device connected to the same IP address as that Smart TV, including a smart phone, tablet, or personal computer. In other words, Vizio collects its consumers' viewing data and distributes it to third

---

[8] *See* http://www.vizio.com/privacy#supplement (last visited Dec. 22, 2015).
[9] *Id.*

parties, who may then push customized advertisements to every device in an entire household – even devices that have no connection to the Vizio Smart TV aside from being connected to the same Internet network as that television.

21. Vizio's Privacy Policy and website are misleading in that they frame the purpose for data collection to be for improving its users' experience. For instance, the page on Vizio's website dedicated to informing consumers about Inscape prominently displays the phrase "[m]eaningful insights to bring you more of what you love."[10] In reality, Vizio collects viewing data in order to sell it to third parties such as advertisers and media content providers. In statements directed to investors in its SEC prospectus, Vizio has emphasized the market trend in advertising for delivering targeted ads based on viewing data. Vizio assured investors that its "platform can provide [advertisers, media content providers and analytics providers] with anonymized, highly specific viewing data using [its] Inscape data services," stating: "We believe the monetization of our connected platform through these partnerships will represent a significant component of our solution set in the future."[11]

**Consumer Data Collection is Part of Vizio's Business**

22. Vizio sells the information it collects from its consumers' viewing habits to third parties. It states that it "shares the Viewing Data in the aggregate with media and data analytics companies who have a business need to analyze television viewing behaviors in the aggregate."[12] This information "can be used to generate intelligent

---

[10] http://www.vizio.com/inscape (last visited Dec. 22, 2015).

[11] https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612 ds1.htm#toc946612_10 (last visited Dec. 22, 2015).

[12] https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612ds 1.htm#toc946612_10 (last visited Dec. 22, 2015).

insights for advertisers and media content providers and to drive their delivery of more relevant, personalized content through our [Smart TVs]."[13]

23. After Vizio collects a consumer's viewing patterns, that information is linked to the consumer's IP address. That collective information is then sent to a data broker. Data brokers are companies that are in the business of aggregating consumer information from multiple sources in order to create detailed profiles of individuals. Holistic and detailed profiles of individuals are, of course, more valuable to businesses than piecemeal and disconnected bits of data. After aggregation, data brokers sell or share the packages of information with other businesses, such as advertisers or media content providers. The companies that purchase this information could then use it to tailor television advertisements, e-mail spam, and even phone calls to consumers' viewing patterns.

24. Unbeknownst to consumers who are drawn to purchasing Vizio's Smart TVs by their relatively low prices (compared to competing Smart TVs such as those by Samsung or LG Electronics), Vizio is deriving further income by monitoring and selling its consumers' viewing activity.

25. While obscuring its data collection practices from consumers, in communications geared toward the investment community, Vizio openly recognizes that there currently is an "attractive market opportunity for [its] Inscape data services," since "[a]dvertisers and media content providers are looking for access to real-time data regarding consumer preferences and behaviors so they can better measure and increase

---

[13] *Id.*

their return on content creation and advertising spend."[14] In its SEC prospectus, Vizio recognized its market opportunity for "audience and advertisement measurement," noting that the total global market spend on the industry was approximately $1.9 billion in 2014.

## PLAINTIFF'S EXPERIENCE

26. Plaintiff Daniel Levine purchased a Vizio M Series 1080p Smart TV in the summer of 2014 from Costco Wholesale.

27. Mr. Levine's Vizio Smart TV is connected to the Internet via the same WiFi network, and thus has the same IP address, as many other devices in his home – including his laptop, desktop computer, his family's mobile phones, tablets, gaming console, home theater receiver, and other Smart TV.

28. Mr. Levine and his family regularly use their Vizio Smart TV to stream movies through Vudu and Netflix, for which Mr. Levine pays a monthly subscription fee.

## CLASS ACTION ALLEGATIONS

29. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed classes:

> Nationwide Class:
>
> *All persons who purchased a Vizio Smart TV in the United States.*
>
> Washington State Class:
>
> *All persons who purchased a Vizio Smart TV in the state of Washington.*

30. Excluded from the proposed classes are Vizio, any affiliate, parent, or subsidiary of Vizio; any entity in which Vizio has a controlling interest; any officer, director, or employee of Vizio; any successor or assign of Vizio; anyone employed by

---

[14] https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612ds1.htm#toc946612_10 (last visited Dec. 21, 2015).

counsel in this action; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff, and anyone who purchased a Vizio Smart TV for the purpose of resale.

31. Members of the proposed classes are readily ascertainable because the class definitions are based upon objective criteria.

32. **Numerosity**. Vizio sold over eight million Smart TVs, including a substantial number in California. Members of the proposed classes are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

33. **Commonality and Predominance**. Common questions of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members. These common questions include whether:

> a. Vizio is a "video tape service provider" within the meaning of the VPPA;
>
> b. Vizio obtains "personally identifiable information" and discloses it to third parties in violation of the VPPA;
>
> c. Vizio engages in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington State Consumer Protection Act, through the sale or marketing of the Smart TVs at issue;
>
> d. Vizio was unjustly enriched by receiving Plaintiff and class members' personal information and viewing habits or monies in the form of a premium price paid for Smart TVs;
>
> e. Plaintiff and the members of the Classes are entitled to damages, including compensatory or statutory, and the amount of such damages;
>
> f. Plaintiff and the members of the Classes are entitled to equitable relief, including restitution or injunctive relief;

      g.    Plaintiff and the members of the Classes are entitled to an award of reasonable attorneys' fees, pre-judgment interest, or costs of suit.

34.    **Typicality**. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the members of the proposed classes all purchased Vizio Smart TVs, giving rise to substantially the same claims.

35.    **Adequacy**. Plaintiff is an adequate representative of the proposed classes because his interests do not conflict with the interests of the members of the classes he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on class members' behalf.

36.    **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Vizio economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the vibration issue, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

37.    In the alternative, the proposed classes may be certified because:

      a.    the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Vizio;

      b.    the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of

        non-party class members or which would substantially impair their ability to protect their interests; and

   c.   Vizio has acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

## FIRST CAUSE OF ACTION

**Violation of Video Privacy Protection Act, 18 U.S.C. § 2710**

**(Plaintiff individually and on behalf of the proposed Nationwide Class against Defendant Vizio)**

38.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

39.   Under the Video Privacy Protection Act (VPPA), "A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person . . ." 18 U.S.C. § 2710(b)(1).

40.   "[P]ersonally indentifiable information" under the VPPA "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). "[P]aragraph (a)(3) uses the word 'includes' to establish a minimum, but not exclusive, definition of personally identifiable information." Sen. Rep. 100–599, at 12.

41.   Plaintiff is a "consumer" within the meaning of the VPPA because he is a "renter, purchaser, or subscriber of goods or services from a video tape service provider," 18 U.S.C. § 2710(a). Plaintiff purchased a Vizio Smart TV at a premium price (compared to traditional television sets) for its accessibility to on-demand movies through software applications such as Netflix or Vudu.

42.   Vizio is a "video tape service provider[]" under the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery or prerecorded video cassette tapes or similar audio visual materials," 18

U.S.C. § 2710(a)(4). This includes the delivery of videos to consumers through its Smart TV platform.

43. Plaintiff has viewed movies and/or television shows using the Smart TV platform. Vizio's Smart Interactivity feature has collected information regarding consumers' identities, the identities of specific video materials, and the fact that the persons identified requested or obtained that material.

44. Vizio disclosed, and continues to disclose, this personally identifiable information to third parties. Specifically, Vizio transmits this information to third-party data brokers and businesses with an interest in learning about consumers' viewing habits, such as advertisers and media content providers. These businesses then use that information to their benefit by tailoring advertisements to consumers' Smart TVs, as well as to all devices linked to the same IP addresses as consumers' Smart TVs.

45. As such, Vizio, a video tape service provider, has "knowingly disclose[d]," to data brokers and advertisers, personally identifiable information concerning the Plaintiff and Class in violation of the VPPA. *See* 18 U.S.C. § 2710(b).

46. Plaintiff Levine has not provided Vizio with consent, either in writing or otherwise, to collect his personally identifiable information or to disclose it to third parties.

47. Any disclosures by Vizio of Plaintiff's or the Class's personally identifiable information to data brokers or advertisers were not made in the "ordinary course of business," such as for "debt collection activities, order fulfillment, request processing, and the transfer of ownership[.]" 18 U.S.C. § 2710(a)(2).

48. Plaintiff Levine's and the Class's statutory privacy rights were and are being violated by Vizio's unlawful disclosures. Plaintiff seeks any and all statutory and punitive damages available under the VPPA, reasonable attorneys' fees and other litigation costs, an injunction barring Vizio from collecting and/or disclosing Plaintiff's and the Class's personally identifiable information in the future, as well as any other preliminary and equitable relief the court deems appropriate.

## SECOND CAUSE OF ACTION

**Violation of the Washington State Consumer Protection Act**

**(Deceptive Business Practices, RCW 19.86 et seq., on behalf of the proposed Washington State Class against Defendant Vizio)**

49. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

50. Plaintiff and Class members are "persons" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1).

51. Vizio is a "person[]" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1), and conducts "trade" and "commerce" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(2).

52. Vizio engaged in deceptive acts or practices by failing to disclose that its Smart TVs collect consumers' viewing data and advertisements clicked, and disseminates that information to third parties. The information that Vizio provides to third parties is then used to distribute targeted advertisements not only to consumers' Smart TVs, but any device linked to the same IP address as those Smart TVs."

53. Vizio's conduct was likely to deceive reasonable consumers under the circumstances. That the Smart TVs collect personal information, viewing records, and other information described above, and disseminate this personal information to third parties are material facts that a reasonable consumer would consider in purchasing a TV.

54. Vizio's deceptive acts or practices have occurred in its trade or business and were and are capable of deceiving a substantial portion of the public. As such, Vizio's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

55. As a direct and proximate result of Vizio's deceptive acts or practices, Plaintiff and Class members suffered injury in fact and lost money.

56. Plaintiff and the Class are therefore entitled to an order enjoining the conduct complained of herein; actual damages; treble damages pursuant to RCW 19.86.090; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

57. Plaintiff and the Class are also entitled to equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the Class members, of all or part of the ill-gotten profits Defendants received from their deceptive acts or practices.

### THIRD CAUSE OF ACTION

**Violation of the Washington State Consumer Protection Act**

**(Unfair Business Practices, RCW 19.86 et seq., on behalf of the proposed Washington State Class against Defendant Vizio)**

58. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

59. Vizio is a "person[]" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1), and conducts "trade" and "commerce" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(2).

60. Plaintiff and Class members are "persons" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1).

61. Vizio engaged in deceptive acts or practices by failing to disclose that its Smart TVs collect personal information and viewing records and disseminate this personal information to third parties.

62. Vizio's failure to disclose the existence, operation, and scope of its data collection practices through Smart Interactivity offend public policy as it has been established by statutes, regulations, the common law or otherwise.

63. Vizio's failure to disclose its data collection practices through Smart Interactivity is an act or practice that (1) has caused substantial financial injury to

Plaintiff and Class members; (2) is not outweighed by any countervailing benefits to consumers or competitors; and (3) is not reasonably avoidable by consumers.

64.   Vizio's failure to disclose this practice is an immoral, unethical, oppressive and/or unscrupulous act or practice.

65.   Vizio's unfair acts or practices have occurred in its trade or business and were and are capable of injuring a substantial portion of the public.  As such, Vizio's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

66.   As a direct and proximate result of Vizio's unfair acts or practices, Plaintiff and Class members suffered injury in fact and lost money.

67.   Plaintiff and the Class are therefore entitled to an order enjoining the conduct complained of herein; actual damages; treble damages pursuant to RCW 19.86.090; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

68.   Plaintiff and the Class are also entitled to equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the Class members, of all or part of the ill-gotten profits Vizio received from the sale of its Smart TVs.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
**(Plaintiff individually and on behalf of the proposed Washington State Class)**

69.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

70.   Plaintiff Levine and the Class have conferred a benefit on Vizio in the form of their personal information and viewing habits. Absent the unauthorized collection of such information and its disclosure to third parties, Vizio would have had to pay Plaintiff and the Class money in exchange for this viewing history. In addition, Plaintiff

would not have purchased or would have paid less for their Smart TVs, had Vizio disclosed that its Smart TVs collect user data and viewing habits for dissemination.

71. Vizio has obtained monies which rightfully belong to Plaintiff and the proposed Class members to the detriment of Plaintiff and the proposed Class members.

72. Vizio appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class members on them.

73. It would be inequitable and unjust for Vizio to retain these wrongfully obtained profits and benefits at Plaintiff's and the Class's expense.

74. Vizio's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

75. Plaintiff and the proposed Class are entitled to restitution of the profits unjustly obtained, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

a. An order certifying the proposed classes, and appointing Plaintiff and his counsel to represent the classes;

b. An order awarding Plaintiff and the class members their actual damages, punitive damages, treble damages, and/or any other form of monetary relief provided by law;

c. An order awarding Plaintiff and the class restitution, disgorgement, or other equitable relief as the Court deems proper;

d. An order requiring Vizio to provide adequate disclosure;

e. An order enjoining Vizio from continuing the unfair, unlawful, and deceptive business practices alleged in this Complaint;

f. An order awarding Plaintiff and the classes pre-judgment and post-judgment interest as allowed under the law;

g. An order awarding Plaintiff and the classes reasonable attorneys' fees

and costs of suit, excluding expert witness fees; and

h. An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all issues so triable under the law.

DATED: December 23, 2015

Respectfully submitted,

**GIRARD GIBBS LLP**

By: */s/ Eric H. Gibbs*
    Eric H. Gibbs

Andre Mura
Steven Lopez
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
amm@classlawgroup.com
sal@classlawgroup.com

*Attorneys for Plaintiff*